## INTERNATIONAL–GREAT NORTHERN R. CO. v. SHAW & STUMBERG.

### No. 8702.

Court of Civil Appeals of Texas. San Antonio. Jan. 6, 1932.

Rehearing Denied Feb. 3, 1932.

Eskridge & Groce, of San Antonio, for appellant.

Magus Smith, of Pearsall, for appellees.

FLY, C. J.

This is a suit instituted by appellees to recover of appellant damages alleged to have accrued by reason of the delay and negligent handling of 240 head of cattle, shipped by appellees over the line of appellant from Pearsall to Kansas City, by way of Taylor, Tex. The cause was tried without a jury, and resulted in a judgment for $1,191.37.

We adopt the findings of fact of the trial judge, as follows:

"On the 2d day of July, 1926, the plaintiffs, Shaw & Stumberg, shipped 240 head of large steers, weighing about 1,000 pounds each, from Pearsall, Frio county, Tex., to Kansas City, Mo. Said cattle were routed over the I. G. N. Railroad from Pearsall, Tex., to Taylor, Tex., and over the M. K. & T. Railroad from Taylor, Tex., to Kansas City, Mo. Said cattle were ticky cattle.

"When said cattle were inspected for the purpose of being shipped, ticks were found on them; the local tick inspector of Frio county, Tex., refused to issue a permit, permitting said cattle to be shipped as clean cattle; the plaintiff Shaw took the matter up with the then chairman of the livestock sanitary commission of Texas, Hon. Leo Callan, and that said Callan ordered said local inspector to have said cattle dipped and then issue a state 'A' certificate on said cattle, which was done; and on such certificate the railroad agent at Pearsall, Tex., permitted said cattle to be loaded on the cars at Pearsall, Tex., and issued bills of lading, showing said cattle to be 'Native Cattle,' or, in other words, cattle that were free from ticks; said cattle were loaded on the cars on July 2, at about 11:30 o'clock p. m.

"Said cattle should have arrived in Kansas City in time to have been sold on the market on July 5, 1926, but in fact said cattle did not arrive at Kansas City until 1 o'clock a. m. July 6, 1926, and could not be sold until the market opened on said July 6th, which was one day later than said cattle should have arrived.

"By reason of said delay, there was a shrinkage in said cattle of about 40 pounds per head, and a decline in prices of 25 cents per hundred weight; when said cattle did arrive in Kansas City, they were unloaded in native pens—that is to say in 'Tick free' pens —and, when inspected shortly thereafter, ticks were found on said cattle, and they were immediately quarantined, and about 11:30 a. m. said cattle were reloaded back in the cars and shipped across the river and unloaded in southern pens, or, in other words, tick-infested pens. By reason of said unloading and reloading of said cattle, and the quarantining of said cattle, they were not sold until the 8th day of July, 1926. There was an average shrinkage of about 40 pounds per head on said cattle, for each day until they were sold, and there was a decline in price of about 25 cents per hundred weight for each day until said cattle were sold."

■ The first proposition of appellant is overruled. The schedule was not conclusive as to the time in which appellant customarily carried cattle between the initial point and the point of destination. The testimony as to the customary time consumed in shipments was properly admitted. The same strictness as to the admission of witnesses is not demanded when the cause is heard by a court as when tried by jury.

■ Appellees shipped the cattle under a state certificate which was not sufficient to

760

permit the cattle to be placed in pens for cattle certified by a federal inspector to be free of ticks. Appellees did not obtain a permit from a federal inspector, but evidently intended to evade the regulations made by the Agricultural Department for the shipment of interstate cattle. It was their duty as well as that of the appellant to have the federal permit, and they are in no position to complain of the violation of the rules by the appellant. If the railroad company was guilty of violating a rule of the Department of Agriculture, appellees were cognizant of it and parties to it.

We conclude that neither appellant nor appellees have cause of complaint, but that the trial judge made a just and equitable decision, and the judgment is affirmed.